# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-61380-BLOOM/Valle

THERMOLIFE INTERNATIONAL LLC,

    Plaintiff,

v.

VITAL PHARMACEUTICALS INCORPORATED,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Vital Pharmaceuticals Incorporated's ("VPX" or "Defendant") Motion to Dismiss, ECF No. [73] (the "Motion"). The Court has carefully considered the Motion, all opposing and supporting submissions, including Plaintiff ThermoLife International LLC's ("ThermoLife" or "Plaintiff") Response, ECF No. [78], and VPX's Reply, ECF No. [81], the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

### I. BACKGROUND

The dispute in this case involves amino acid-nitrate compounds and compositions in dietary supplements. ThermoLife was founded in 1998 to provide dietary supplements, and holds numerous patents related to the development and use of ingredients in dietary supplements and food products. ThermoLife also licenses patents related to compounds used in dietary supplements. VPX distributes dietary supplements across the United States. One of the products licensed and sold by ThermoLife is a patented creatine nitrate used in dietary supplements meant to promote muscle mass. The creatine nitrate supplied by ThermoLife is included in many top-selling dietary

supplements. According to ThermoLife, VPX has attacked ThermoLife's creatine nitrate in its own advertising, including false and misleading statements about VPX's "Super Creatine" because products including ThermoLife's creatine nitrate compete directly with VPX's products.

As a result of VPX's alleged false and misleading statements, ThermoLife asserts three claims in its Complaint: Count 1: Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Count 2: Common Law Unfair Competition; and Count 3: A Declaratory Judgment that a press release ThermoLife made regarding a VPX patent is not defamatory. *See generally* ECF No. [1] ("Complaint"). In the Motion, VPX seeks dismissal of the Complaint for lack of statutory standing and failure to state a claim under Rule 12(b)(6).

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

### III. DISCUSSION

In the Motion, VPX first argues that ThermoLife lacks statutory standing to assert its Lanham Act claim. Courts have referred to this requirement as "prudential" standing. However, the Supreme Court has since clarified that the relevant inquiry is whether "this particular class of persons has a right to sue under the substantive statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (citation omitted). As such, in addition to satisfying the constitutional requirement of standing, a plaintiff must also satisfy the requirements of statutory standing. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017).

The test for determining whether a plaintiff has statutory standing under the Lanham Act requires a determination of whether a plaintiff's interests "fall within the zone of interests protected by the law invoked" and whether the injuries suffered were "proximately caused by violations of the statute. *Lexmark Int'l, Inc.*, 572 U.S. at 129, 132.

> [T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act . . . . Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.

*Id*. at 131-32. In addition, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 133.

VPX argues that Thermolife lacks statutory standing because the Complaint fails to plausibly allege an injury within the zone of interests protected by the Lanham Act, including injury to profits or reputation, as Thermolife does not deal in any goods or interact with the consuming public and therefore has no sales or goodwill to damage. VPX argues further that Thermolife fails to plausibly allege that VPX's alleged advertising proximately caused its injuries. The Court disagrees.

In the Complaint, Thermolife alleges that its business, reputation, goodwill, sales and profits are harmed when consumers are misled to purchase a falsely advertised product that competes with products containing creatine nitrate sourced from Thermolife. These are the type of commercial interests the Lanham Act seeks to protect. *See id*. at 137 (the "alleged injuries—lost sales and damage to [] business reputation—are injuries to precisely the sorts of commercial interests the Act protects."). Thus, Thermolife is squarely within the zone of interests protected by the Lanham Act.

Moreover, "when a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendant's aim was to harm its

immediate competitors, and the plaintiff merely suffered collateral damage. *Id*. at 138. Furthermore, when "a defendant who seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product may be said to have proximately caused the plaintiff's harm." *Id*. at 138 (citation and quotations omitted; emphasis in original). In the Complaint, Thermolife alleges that it licenses and sells its patented creatine nitrate for use in dietary supplements, and that creatine nitrate it sources is included in many top-selling dietary supplements. Thermolife further alleges that VPX has specifically attacked Thermolife's creatine nitrate in its advertising on its website, in publications, and on social media, because products containing creatine nitrate compete directly with VPX's "Super Creatine"-containing products. Thus, even though Thermolife does not itself compete directly for consumers in the dietary supplement market, products containing creatine nitrate sourced from it do. It plausibly follows that any disparaging statements made VPX about creatine nitrate would nevertheless impact sales of competing products containing creatine nitrate sourced from Thermolife. Accordingly, Thermolife has sufficiently alleged proximate cause, and satisfies the requirement of statutory standing.

VPX next argues that the Lanham Act claim fails to satisfy the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. A claim for false advertising under the Lanham Act requires the plaintiff to allege: "(1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related

declining sales or loss of goodwill." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260-61 (11th Cir. 2004)) (further citations omitted).

As this Court has previously noted, the Eleventh Circuit has not yet decided whether Rule 9(b) applies to Lanham Act claims based in fraud. *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 15-CIV-80352-BLOOM/Valle, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 16, 2016). Thus, the Court declines to expand Rule 9(b) absent instruction from the Eleventh Circuit or persuasive guidance from its sister districts. As such, the Complaint need not satisfy Rule 9(b)'s heightened pleading standard.[1]

Nevertheless, VPX argues further that Thermolife has not alleged any statements or representations that are actionable under the Lanham Act because the statements are either opinions or nonactionable puffery. Actionable false statements generally fall into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers. *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999), *aff'd sub nom. BellSouth Adv. v. Lambert Pub.*, 207 F.3d 663 (11th Cir. 2000) (internal citations omitted).

A third category of advertising is generally known as "puffery" or "puffing." *Id.* Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." *Id.* (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)); *see Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir.

---

[1] To the extent that VPX argues that the alleged statements were not sufficiently disseminated to the relevant public because the allegations in the Complaint do not comply with Rule 9(b), the argument is foreclosed by the Court's determination that Rule 9(b) does not apply.

1983); *Univ. of Fla. Research Found., Inc. v. Orthovita, Inc.*, No. 1:96-CV-82-MMP, 1998 WL 34007129, at *27 (N.D. Fla. Apr. 20, 1998). Vague or highly subjective claims of product superiority generally fall within the category of non-actionable puffery. *BellSouth Advert. & Pub. Corp.*, 45 F. Supp. 2d at 1320 (internal citations omitted). However, false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing are not puffery and are actionable. *Id.*; *Southland Sod Farms*, 108 F.3d at 1145. VPX's alleged statements fall in the latter category.

The Complaint sets forth specific false statements and misrepresentations allegedly made by VPX about creatine nitrate's characteristics, including for example that it is "minimally effective," "useless," "can be dangerous," and "that there is ZERO scientific evidence it can increase performance. In addition, Thermolife alleges that VPX made false and misleading statements regarding the characteristics of "Super Creatine," for example by falsely and misleadingly comparing the solubility of "Super Creatine" to creatine nitrate, blurring the concepts of dissolution rate and solubility, claiming that "Super Creatine is the world's only water-stable creatine," that it is "much more bioavailable than regular creatine," and can "beef up your muscles and your brain." Furthermore, VPX has claimed that research shows that "Super Creatine" can cross the blood brain barrier "twenty times more efficiently than regular creatine," and helps with "all forms of dementia, including Alzheimer's, Parkinson's, Huntington's, and other forms of dementia." Contrary to VPX's assertion, these are allegedly false descriptions of characteristics of creatine nitrate and "Super Creatine," and not vague or highly subjective claims of product superiority. Therefore, the statements alleged in the Complaint are actionable under the Lanham Act.

VPX argues next that it has not made any false or misleading statements concerning "Super Creatine," and engages in a lengthy analysis of why the materials relied upon by Thermolife in its Complaint, including the '466 patent, Burov paper, and Reddeman study, do not in fact support Thermolife's allegations. At best, VPX's arguments in this regard simply constitute denials of Thermolife's allegations and are not a basis for dismissal. Whether or not the materials relied upon by Thermolife ultimately support its claims is a question of fact not suitable for disposition upon a motion to dismiss.[2]

Finally, VPX argues that Count 3, in which Thermolife seeks a declaration that its October, 2018 press release is not defamatory, must be dismissed because it seeks an advisory opinion on an affirmative defense that Thermolife would assert in hypothetical litigation that has not been initiated. The Court agrees.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The act "vest[s] district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289; *see also Smith v. Casey*, 741 F.3d 1236, 1244 (11th Cir. 2014); 28 U.S.C. § 2201(a) (providing that district courts "may" exercise jurisdiction over a declaratory judgment claim). Here, Thermolife alleges that the press release was true and contained forward looking statements of opinion. Thermolife further contends that because VPX's in-house counsel sent Thermolife a demand that it immediately retract four statements made in its press release and threatened to pursue the matter more aggressively, the claim for declaratory relief should proceed. The Court disagrees.

---

[2] VPX does not seek dismissal of Thermolife's unfair competition claim on grounds independent from the Lanham Act claim. As such, Count 2 will not be dismissed for the same reasons that Count 1 survives.

In *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007), the Supreme Court reiterated that a court cannot entertain a Declaratory Judgment Act lawsuit where there is "no case or controversy under Article III" because the plaintiff seeks "an advisory opinion–about an affirmative defense it might use in some future litigation." *Id*. at 142-43 (holding that a litigant cannot use the Declaratory Judgment Act to secure "advisory rulings on the potential success of an affirmative defense before a cause of action has even accrued") (citing *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) ("dismissing a suit that 'attempt[ed] to gain a litigation advantage by obtaining an advance ruling on an affirmative defense'"); *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape[.]"); *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945) ("rejecting use of the Declaratory Judgment Act as a 'medium for securing an advisory opinion in a controversy which has not arisen'"); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (a party to a Declaratory Judgment Act case cannot ask a court to enter "an opinion advising what the law would be upon a hypothetical state of facts"). Truth and opinion are defenses to a claim for defamation. *Lispig v. Ramlawi*, 760 So. 2d 170, 173-74 (Fla. 3d DCA 2000) Thus, the declaratory judgment Thermolife seeks here is essentially designed to protect it from the threat of litigation that may very well never occur.

Because Thermolife essentially seeks a declaratory judgment that its defenses would be meritorious if it is sued by VPX for defamation, or as a way to head such a claim off at the pass, Thermolife seeks an impermissible advisory opinion on a matter that is not ripe. Accordingly, Thermolife's claim for declaratory relief is due to be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED that

1. VPX's Motion, **ECF No. [73]**, is **GRANTED IN PART AND DENIED IN PART**.

    Count 3 is dismissed with prejudice. In all other respects, the motion is denied.

2. VPX shall file its Answer to the Complaint **no later than October 18, 2019.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 7, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record