THERMOLIFE INTERNATIONAL LLC,

      Plaintiff,

v.

VITAL PHARMACEUTICALS INCORPORATED,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

**THIS CAUSE** is before the Court upon Plaintiff ThermoLife International LLC's ("ThermoLife" or "Plaintiff") Motion to Dismiss Defendant's Counterclaims, ECF No. [88] (the "Motion"). The Court has carefully considered the Motion, all opposing and supporting submissions, including Defendant Vital Pharmaceuticals Incorporated's ("VPX" or "Defendant") Response, ECF No. [94], and Thermolife's Reply, ECF No. [97], the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

## I.     BACKGROUND

The dispute in this case involves amino acid-nitrate compounds and compositions in dietary supplements. In the Complaint, ThermoLife asserts three claims for violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 1), common law unfair competition (Count 2), and for a declaration that a press release ThermoLife made regarding a VPX patent is not defamatory (Count 3). *See generally* ECF No. [1] ("Complaint"). VPX previously sought dismissal of ThermoLife's claims, which the Court granted in part. *See* ECF No. [82]. Specifically, the Court dismissed Thermolife's request for a declaration on the basis that Thermolife was essentially

seeking a declaratory judgment that its defenses would be meritorious if it is sued by VPX for defamation. *Id.*

VPX now asserts counterclaims against ThermoLife, and its President and Chief Executive Officer, Ron Kramer ("Kramer"), for trade libel (Count 1) and tortious interference with advantageous business relationships (Count 2). ECF No. [83] ("Counterclaim") In support of its Counterclaim, VPX alleges that ThermoLife is a mere sham corporation used by Kramer to function as a patent monetization entity to assert frivolous claims against dietary supplement manufacturers and retailers for improper, coercive purposes. On October 3, 2018, ThermoLife, through Kramer, caused a press release containing six statements VPX contends to be false to be released, regarding a patent proceeding involving VPX and its "Super Creatine" product. VPX contends that its patents remain valid until the United States Patent and Trade Office ("USPTO") takes action, which can only occur after full review and exhaustion of appellate rights, which process is still ongoing in VPX's case. As a result, VPX asserts that the statements made in ThermoLife's press release are false, willful, malicious and misleading, and have caused serious and irreparable injury to VPX's reputation and sales.

In the Motion, ThermoLife seeks dismissal of VPX's Counterclaim pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure.

## II.      LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

In the Motion, ThermoLife argues that the Counterclaim should be dismissed because the allegations are insufficient to state plausible claims for trade libel or tortious interference, special damages are not alleged with sufficient particularity, the Counterclaim fails to allege a sufficient

basis for personal liability against Kramer, and the statements about which VPX complains are true or non-actionable opinions. The Court considers each argument in turn.

### A. The claim for trade libel is sufficiently pleaded

ThermoLife argues that the Counterclaim fails to state a claim for trade libel because the allegations are merely a conclusory recitation of the elements of the claim and special damages are not pleaded with sufficient particularity. In order to state a claim for trade libel, a plaintiff must allege "(1) [a] falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Botham v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984) (citing *Allington Towers Condo. N., Inc. v. Allington Towers N., Inc.*, 415 So. 2d 118 (Fla. 4th DCA 1982). In addition, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). However, Rule 9(g) requires no more than a specific statement that allows a defendant to prepare a responsive pleading and begin its defense. *Brennan v. City of Minneola, Fla.,* 723 F. Supp. 1442, 1444 (M.D. Fla. 1989).

In the Counterclaim, VPX alleges that ThermoLife issued a press release that contained six statements it contends were false knowing that the statements would likely induce customers not to purchase products from VPX. ECF No. [83] at ¶¶ 35, 49. As a result, VPX alleges that current and potential customers refrain from purchasing VPX products, and VPX has suffered lost sales and expenses incurred to counteract the disparaging effect of ThermoLife's publication on VPX's business. *Id*. ¶¶ 50-51. VPX therefore seeks its lost profits and counter-promotion costs as items of damages. *Id*. at 21.

Upon review, the allegations in the Counterclaim are sufficient to state a claim for trade libel. The Counterclaim alleges that ThermoLife through Kramer published the statements, and the press release attached to the Counterclaim identifies the date the statements were published. *See* ECF No. [83-1]; *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-58 (S.D. Fla. 1986) (explaining that "the [p]laintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred."). In addition, special damages are sufficiently pleaded, as VPX explicitly states that it seeks lost profits and counter-promotion costs. Contrary to ThermoLife's contention, federal pleading standards do not require more. *See Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1341 (M.D. Fla. 2003) (when a case is brought pursuant to a court's diversity jurisdiction, "the forum state's law governs the substantive claims, but federal law governs the specificity with which to allege them.").

### B. Tortious interference

ThermoLife argues next that VPX's claim for tortious interference fails because the Counterclaim does not identify the relationships with which ThermoLife has allegedly interfered, including who the relationship is with and what type of relationship or contract was impacted.

In order to state a claim for tortious interference, Plaintiff must allege the following: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Under the first prong of a tortious interference claim, "the plaintiff may allege tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quoting *Ethan Allen, Inc.*, 647 So. 2d at 815) (internal quotations omitted).

Stated differently, "an action for tortious interference with a business relationship requires a business relationship that is evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* (internal citation and quotation omitted). Thus, this cause of action requires the plaintiff to "prove a business relationship with identifiable customers." *Id.* (quoting *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996)).

Here, VPX specifically identifies Publix, Albertsons, Kroger, Wal-Mart, Walgreens, 7-Eleven, Europa Sports Products, GNC, The Vitamin Shoppe, Amazon.com, bodybuilding.com, vitacost.com, and tigerfitness.com as business relationships. At this stage in the proceedings, these customers are sufficiently identifiable. However, the "U.S. military bases" and "gyms" generally alleged by VPX are not sufficiently identifiable. Moreover, the Court agrees with ThermoLife that the Counterclaim contains no factual allegations regarding ThermoLife's knowledge of VPX's relationships with the identified customers. As such, the claim for tortious interference is not adequately pleaded.

Even so, ThermoLife cites no legal authority for the proposition that a claim for tortious interference would require VPX to allege what type of relationship or contract was impacted by its alleged conduct. Indeed, contrary to ThermoLife's contentions, a tortious interference claim is not subject to a heightened pleading standard. *See Nationwide Life Ins. Co. v. Perry*, No. 9:12-CV-80194, 2012 WL 4838986, at *5 n.6 (S.D. Fla. Oct. 11, 2012) (rejecting argument that tortious interference must be pled with specificity under Rule 9); *Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc.*, 770 F. Supp. 1530, 1537 (M.D. Fla. 1991) (stating that Rule 8 standard applies to a tortious interference claim).

### C. Kramer's personal liability

VPX asserts both claims in the Counterclaim against Kramer personally. ThermoLife argues that there are no allegations in the Counterclaim that Kramer, as an individual, published actionable false statements or interfered with VPX's business relationships. In response, VPX argues that Kramer, as the owner and manager of ThermoLife, is liable for torts he personally committed.

"A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). However, "[i]t is well-settled . . . that individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers." *First Fin. USA, Inc. v. Steinger,* 760 So. 2d 996, 997-98 (Fla. 4th DCA 2000) (citing *Orlovsky v. Solid Surf, Inc.,* 405 So. 2d 1363 (Fla. 4th DCA 1981)). As such, "[a] corporate officer or representative of a defendant corporation is not shielded from individual liability for his own torts." *Id.* at 998 (citing *Roth v. Nautical Eng'g Corp.,* 654 So. 2d 978 (Fla. 4th DCA 1995)).

Even so, a claim must include sufficient factual matter to state a claim that is plausible on its face. Here, the only allegations regarding Kramer's personal involvement is that he caused ThermoLife to publish the allegedly false press release, and one of the allegedly false statements within the press release is a quote attributed to him. ECF No. [83] ¶¶ 34-35. Indeed, VPX's allegation that Kramer published the press release is contradicted by the press release attached to the Counterclaim, which states that it is issued by ThermoLife. Moreover, to the extent that VPX intends to rely upon the allegedly false quote attributed to Kramer, VPX has pleaded no facts in support of a trade libel claim with respect to that statement, other than that it was contained in the

allegedly false press release published by ThermoLife. As such, VPX fails to plead sufficient facts in support of its trade libel claim against Kramer.

Similarly, the Counterclaim contains no factual allegations in support of VPX's claim for tortious interference against Kramer personally. As such, this claim is also due to be dismissed.

### D. Truth or non-actionable opinions

Finally, ThermoLife argues that the Counterclaim fails because the statements in ThermoLife's press release are truthful or non-actionable opinion. In support of its argument, ThermoLife attaches numerous documents for the Court's consideration, which ThermoLife contends demonstrate that the statements are truthful or non-actionable opinion. VPX responds that the determination is a question of fact not suitable for disposition upon a motion to dismiss. The Court agrees with VPX.

It is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ([A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") (citation omitted). Here, VPX does not dispute the authenticity of the documents provided by ThermoLife.

Nevertheless, truth and opinion are defenses to a claim for defamation. *Lispig v. Ramlawi*, 760 So. 2d 170, 183-84 (Fla. 3d DCA 2000). "[U]nder Florida law, truth is only a defense to defamation when the truth has been coupled with good motive." *Id.* at 183 (citation omitted). "The law is clear that *both* truth and good motives are issues for the jury." *Id.* (emphasis in original). In

addition, "[p]ure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). However, an opinion defense is not available if the facts underlying the opinion are false or inaccurately presented. *See Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986) (stating that the relevant question is "whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks."); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (a statement may still imply false assertions of fact if those facts are incorrect, incomplete or the speaker's assessment of the facts is erroneous).

Here, the materials relied upon by ThermoLife evince nothing with respect to its motive for the press release, nor do they demonstrate that the allegedly false statements are non-actionable opinions, given the allegations in the Counterclaim. As such, whether the alleged libelous statements made by ThermoLife are true or non-actionable opinions is not suitable for disposition at this juncture.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [88]**, is **GRANTED IN PART AND DENIED IN PART**. The claims against Ron Kramer are **DISMISSED WITHOUT PREJUDICE**. In addition, Count 2 asserting a claim for tortious interference with advantageous relationships is **DISMISSED WITHOUT PREJUDICE**. To the extent that VPX may in good faith remedy the deficiencies noted in this Order, VPX may file an amended counterclaim, **on or before January 31, 2020**. In the event that VPX does not file an amended counterclaim, Thermolife shall file its answer to the Counterclaim, **on or before February 7, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 23, 2020.

BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record